604 So.2d 172 (1992)
STATE of Louisiana
v.
Lawrence R. PITTMAN, aka Terry Hill.
No. 89-KA-1147.
Court of Appeal of Louisiana, Fourth Circuit.
July 30, 1992.
*173 Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for the State of La.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant.
Before CIACCIO and WARD and ARMSTRONG, JJ.
*174 WARD, Judge.
On August 5, 1988, Lawrence Pittman was charged by bill of information with one count of armed robbery of Helen Russo, one count of armed robbery of Lois Walsh, one count each of the attempted murders of Officers Anthony Ritter, Mark Mornay, David Ally and Richard Cochran. The State dismissed the count charging attempted murder of Richard Cochran on March 20, 1989. Pittman was arraigned August 10, 1988 and pled not guilty. On September 9, 1988 the trial court granted a pro se motion for self-representation, establishing Pittman as co-counsel. Trial then began before a twelve member jury. On March 21, 1989, the jury found Pittman guilty as charged on the armed robbery counts, guilty as charged of the attempted first degree murders of Mornay and Ally and not guilty of the attempted murder of Ritter. The defendant filed a motion for new trial which was denied April 3, 1989. The trial court sentenced Pittman to ninetynine years on each of the armed robbery convictions to be served without benefit of parole. These sentences are to run consecutively. The court sentenced Pittman to serve fifty years at hard labor on each of the attempted first degree murder convictions to be served without benefit of parole. These sentences are to run concurrently with each other.
Around noon on June 7, 1988, Helen Russo and her sister Lois Walsh parked their car in the parking lot behind the Moonwalk in downtown New Orleans. Russo, the driver, exited the car and then suggested to Walsh that they bring tote bags that were in the back seat of the car with them as they toured the French Quarter. Russo walked around to the passenger side as Walsh reached into the back seat. At that point, Russo noticed a blue car pull up close to her car. The driver raised his right hand and Russo saw he was holding a gun. He demanded her purse and jewelry which she immediately gave him. Walsh then realized the man was robbing them. He demanded Walsh's wallet which she gave to him. He also demanded a necklace but Walsh could not unfasten it.
Earlier that morning, Officers Ida Sonnier, Mark Mornay, David Ally, Donald Davis and Anthony Ritter began conducting a surveillance of the parking lot because it had been the scene of robberies and automobile thefts. From a vantage point on the third floor of a nearby building, Sonnier saw the two women giving objects to the man in the blue car. She watched through her binoculars and saw Walsh trying to remove the chain. She attempted to alert the other officers using her radio, but when she could not get it to operate successfully, she opened the window and yelled that a robbery was in progress.
Mornay and Ally, who were in plain clothes and were stationed on the ground near a floodwall bordering the parking lot, ran into the lot. Mornay yelled "Police" and Pittman fired two shots in their direction. The officers returned fire. Davis, Stokes and Cochran, also in plain clothes and stationed on the ground, ran to the area and Pittman shot at them. Pittman then attempted to escape in his car but ran into a chain bordering the parking lot. The chain wrapped around the car and stopped it. Davis ran to the car and pulled Pittman out of it. The items stolen from the two women and a handgun were recovered from inside the car.
Russo and Walsh identified Pittman in photographic line-ups.
Charles Krone, a criminalist with NOPD, examined the windshield of Pittman's car and found six bullet holes. He determined that four were made by bullets fired from inside the car and two were fired from outside the car.
Mrs. Russo and Mrs. Walsh testified at trial; each positively identifying Pittman as the man that robbed them.
We have examined the record for errors patent and note that the trial court improperly denied Pittman parole, probation, or suspension of sentence on the two attempted murder charges. We amend the sentence to reflect that Pittman is eligible under C.Cr.P. art 882. See also State v. Solid, 529 So.2d 108 (La.App. 4th Cir.1989). Parole eligibility will be determined by the *175 Department of Corrections in accordance with R.S. 15:574.4.
Pittman's counsel raised one assignment of error. He alleges that the State failed to present sufficient evidence to support the attempted first degree murder convictions. In assessing the evidence to support a conviction in a direct evidence case, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982). R.S. 14:30(A)(2) provides that first degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a fireman or a peace officer engaged in the performance of his lawful duties. While a conviction for murder can be obtained by showing that the defendant had the specific intent to kill or inflict great bodily harm, a conviction for attempted murder requires a showing that the defendant had the specific intent to kill and committed an act tending to accomplish that purpose. State v. Butler, 322 So.2d 189 (La.1975); State v. Banks, 496 So.2d 1099 (La.App. 4th Cir.1986).
R.S. 14:10(1) defines specific intent as:
That state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act.
Specific intent can be proven by direct evidence or it may be inferred from the circumstances of the case. R.S. 15:445; State v. Noble, 425 So.2d 734 (La.1983).
The evidence showed that Pittman shot at Mornay and Ally, two NOPD officers, while they were engaged in the performance of their duties. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that Pittman had the specific intent to kill the officers when he shot at them. State v. Talbert, 543 So.2d 585 (La. App. 4th Cir.1989). This assignment has no merit.
Pittman claims he was denied the effective assistance of counsel. This claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is deficient when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland, supra, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result would have been different. The evidence against Pittman was overwhelming. His vague allegations that his first counsel, Jeffrey Smith, "knew nothing of the case", and his assertion that his second counsel "was not prepared" do not meet the standard set forth in Strickland.
Pittman also alleges his counsel on appeal is ineffective because he raised only one assignment of error. Counsel for Pittman adequately raised an assignment of error on appeal by arguing that there was insufficient proof to find Pittman guilty of attempted first degree murder. Although this assignment of error is meritless, counsel fulfilled his obligation by conscientiously raising this issue.
Pittman filed a pro se brief and although it alleges numerous errors, he abandoned many and those that remain are without merit. Pittman raises numerous errors based on alleged procedural defects before, during, and after his trial; such as,the trial court erred in denying his Motion to Withdraw his Plea of Not Guilty, his Motion to Suppress the Evidence, his Motion to Suppress the Identification, his Motion for a New Trial and his Motion for Arrest of Judgment. Each of these assignments *176 of error have been reviewed and none has merit. Other "assignments of error" have no legal basis, and Pittman has not shown how he was harmed by these alleged errors. These are so frivolous they do not warrant discussion. Others have already been decided in writ applications, and we will not discuss them again.
Although there are no pro se claims of trial errors worth discussing, we will discuss Pittman's claim that his sentence is excessive. Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868 (La. App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in LSA C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Brogdon, supra; State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
The trial court also ordered that the sentences for armed robbery be served consecutively. C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
In this case, the trial court imposed consecutive sentences as to crimes arising out of the same act or transaction. When consecutive sentences are imposed for crimes arising out of a single transaction, the trial court must articulate particular justification for such a sentence beyond a mere articulation of the standard sentencing guidelines set forth in C.Cr.P. art. 894.1. State v. Messer, 408 So.2d 1354 (La.1982); State v. Smith, 539 So.2d 993 (La.App. 4th Cir.1989). However, consecutive sentences for crimes arising out of the same act are not per se excessive if the trial court considers other appropriate factors in imposing sentence. State v. Ortego, 382 So.2d 921 (La.1980), cert. den. sub nom. Ortego v. Louisiana, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980).
Further, the trial court noted the risk to the public, the risk to the police officers, Pittman's extended criminal history, the potential for his rehabilitation. As such, it appears the trial court considered the appropriate factors in sentencing him to consecutive sentences.
Pittman, in a supplemental brief, complains the trial court participated in a plea bargain in which he would be sentenced to thirty-three years if he pled guilty, and that after he refused to accept the plea, the trial court acted vindictively in sentencing him to a longer sentence. There is nothing in the record that shows the trial court participated in a plea bargain or that one was even offered. Moreover, although there is not the slightest showing of a plea bargain, even if there were the trial court may in some situations ignore it.
In the case of Frank v. Blackburn, 646 F.2d 873 (5th Cir.1980), the court acknowledged that a defendant cannot be punished *177 simply for exercising his constitutional right to stand trial. However, the court held that mere imposition of a longer sentence than the defendant would have received had he pled guilty does not automatically constitute such punishment. A state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening the accused with more severe punishment should a negotiated plea be refused. Frank v. Blackburn, supra.
It is equally clear that a defendant is free to accept or reject the "bargain" offered by the State. Once the bargainwhether it be reduced charges, a recommended sentence, or some other concessionis rejected, however, the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is evidence of judicial vindictiveness. Id. at 883.
The Louisiana Supreme Court held that a trial judge's pre-conviction offer of a lenient sentence should not be viewed as setting a limit for the justifiable sentence after conviction. State v. Barkley, 412 So.2d 1380 (La.1982). As such, Pittman's argument is without merit. State v. Tuesno, 456 So.2d 186 (La.App. 4th Cir.1984), writ den. 458 So.2d 929 (La.1985).
We amend the attempted murder sentences to allow for parole, probation and suspension of sentence. We otherwise affirm the conviction and sentence.
AMENDED; AS AMENDED AFFIRMED.