633 So.2d 822 (1994)
STATE of Louisiana
v.
Larry DAVIS.
No. 93-KA-0663.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1994.
*823 Ronald J. Rakosky, New Orleans, for appellant.
Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for appellee.
Before BARRY, CIACCIO and LANDRIEU, JJ.
CIACCIO, Judge.
Defendant, Larry Davis, was charged with one count of attempt armed robbery and two counts of attempt second degree murder. A twelve-member jury found him guilty as charged on all three counts. Defendant was sentenced to serve 49½ years at hard labor without benefit of parole, probation, or suspension of sentence on the attempt armed robbery conviction and to serve 50 years at hard labor on each of the attempt second degree murder convictions, all sentences to run consecutively.
Defendant asserts three assignments of error on appeal.
1. The trial court erred in imposing unconstitutionally excessive sentences.
2. The evidence upon which Larry Davis was convicted of attempt armed robbery and two counts of attempt second degree murder is constitutionally insufficient, as a result of which judgments of acquittal must be entered on each count.
3. The trial court did not meaningfully consider the sentencing guidelines.
For the reasons stated herein, we affirm defendant's conviction and sentences.

Facts
At approximately 10:00 p.m. on March 15, 1990, Karen Wood, Lars Anderson, and William Burgstiner left Brigsten's Restaurant in the Riverbend area of New Orleans. They walked toward their car, Ms. Wood and *824 Anderson walking together and Burgstiner walking a short distance behind them. As they crossed a parking lot, a red car with two people inside drove past Ms. Wood and Anderson and stopped. The passenger of the car, later identified as the defendant Larry Davis, exited the car and walked up behind Ms. Wood, pointing a gun toward her head. Burgstiner, who observed this while he was walking behind Ms. Wood, shouted and grabbed Davis. Davis and Burgstiner struggled, and during the struggle Burgstiner was shot in the abdomen. Burgstiner was then shot in the back by the driver of the car, later identified as Troy Bridges, who had exited the car and had come up behind Burgstiner. As a security guard arrived and exchanged gunfire with the assailants, they fled on foot. Burgstiner was taken to a hospital.
William Burgstiner testified that when he saw the passenger of the red car alight and point a gun at Ms. Woods, he ran and grabbed the man, who he identified as Davis. Burgstiner testified that as they struggled, Davis' gun fired, and he was hit. The other man then shot him in the back. He testified he fell to the ground, and as he heard more shots, he crawled under a car. He testified that in all he was admitted to the hospital three times for treatment of his gunshot wounds.
Karen Wood testified that after the red car passed her and Anderson, she heard a scuffle and shots, and she turned around to see that Burgstiner had been shot. She testified that she saw both men's faces, including that of the smaller man with whom Burgstiner had been struggling. She testified that she chose Bridges' photograph in a lineup, identifying him as the taller man standing behind Burgstiner. She testified she was not asked to view a photographic lineup with respect to Davis, but she positively identified him as the shorter man with whom Burgstiner had struggled. She testified she was unaware that Davis had pointed a gun at her until after Burgstiner had told her. She also testified that she did not remember anyone asking for her purse or jewelry, and nothing was taken from her. She testified that the assailants ran from the scene when a security guard arrived.
Lars Anderson testified that after the red car passed him and Ms. Wood, he heard a shot. He turned and saw Burgstiner struggling with one man while another man was hitting him from behind. He identified Davis as the man with whom Burgstiner was struggling. He testified that Davis then shot Burgstiner in the stomach, and the other man shot Burgstiner in the back. Anderson testified he grabbed Davis by the shoulders to separate him from Burgstiner. Davis then turned and pointed his gun at Anderson, Anderson dropped to the ground, and Davis fired at him, barely missing him. Anderson then crawled between two parked cars. He testified that he heard more shots, and then the men ran, leaving the car, when a security guard arrived.
Sgt. Tyronne Smith testified that he was working a paid detail in the area that night. He had just walked a couple to another car when he saw the victims walking through the parking lot and heard gunshots. He testified that after the shooting, the assailants ran toward the red car, which was in the same direction from which he was approaching. He testified that the shorter man pointed his gun at him, fired once, and then the two men fled.

Sufficiency of the Evidence
Defendant contends that there was insufficient evidence to support his convictions. The standard of review for sufficiency of evidence has been stated in State v. Heck, 560 So.2d 611, 614-615 (La.App. 4th Cir. 1990), writ den. 566 So.2d 395 (1990):
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 [61 L.Ed.2d 560] (1979); State v. Jacobs, 504 So.2d 817 (La.1987). Where the conviction is based upon circumstantial evidence, R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Langford, 483 So.2d 979 (La.1986). *825 R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985).
Defendant contends that there was insufficient evidence to support his attempt armed robbery conviction because the State failed to present any evidence to show that he intended to rob Ms. Woods.
An armed robbery is defined by La.R.S. 14:64 as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:27 defines an attempt: "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."
Specific intent may be inferred from the circumstances of a transaction and from the action of the accused. State v. Graham, 420 So.2d 1126, 1127 (La.1982). Further, specific intent is a legal conclusion to be resolved by the fact-finder. Id., at 1128.
In the present case, the victim, Bill Burgstiner, testified that while walking in the restaurant parking lot he observed defendant exit a vehicle and point a gun to the head of his companion Karen Woods. Although Ms. Woods did not hear defendant demand anything of value from her, it is undisputed that defendant was armed with a dangerous weapon within a few feet of Ms. Woods and his action in pointing the gun to Ms. Woods' head is clearly an act tending directly toward defendant's objective of robbing Ms. Woods.
The defendant was tried by a twelve member jury of his peers. We think it quite reasonable for the jury to infer from the circumstances presented that defendant intended to commit an armed robbery of Ms. Woods and her companions. Viewing all the evidence in a light most favorable to the prosecution, we find the evidence presented on the armed robbery charge is clearly sufficient to sustain defendant's conviction.
Defendant next contends that the State failed to prove he possessed the specific intent to kill Burgstiner or Anderson and therefore the evidence with regard to the attempt second degree murder convictions is insufficient.
Although a conviction for second degree murder requires the intent to kill or to inflict great bodily harm, a specific intent to kill must be proven to support a conviction for attempt second degree murder. State v. Fluker, 618 So.2d 459 (La.App. 4th Cir.1993); State v. Pittman, 604 So.2d 172 (La. 4th Cir.1992), writ den. 610 So.2d 796 (1993). Sufficient evidence of an intent to kill has been found when the defendant shot a gun at the victim. Pittman, supra.
With respect to the count involving Mr. Burgstiner, defendant alleges that the State failed to prove that he had the intent to kill Burgstiner. He argues that the evidence at most showed that the gun accidentally discharged during the struggle with Burgstiner. Although Burgstiner was shot during a struggle for the gun, Burgstiner testified that during the struggle, "I was trying to keep him from shooting me." Under these circumstances, we find that it was reasonable for the jury to conclude the shooting was more than accidental and there was sufficient evidence of defendant's specific intent to kill Burgstiner.
Defendant next contends that the State failed to show he had the requisite specific intent to kill Lars Anderson. He argues that he did not have this intent, but rather he was merely trying to escape when he pointed the gun at Mr. Anderson. He also questions whether any shots were actually fired at Mr. Anderson as the security guard arrived at that point and began shooting as well.
The evidence at trial indicates that although Mr. Anderson did not actually see the defendant shoot at him, he testified that defendant pointed the gun in his face and he dove to the ground. Mr. Anderson stated he *826 felt the flash of the bullet pass right by his head.
We find that the jury could have found beyond a reasonable doubt that the shot which just missed Mr. Anderson's was fired by defendant and defendant had the requisite specific intent to kill to Mr. Anderson. Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found defendant guilty of attempt second degree murder. We therefore conclude that the evidence is sufficient to sustain defendant's conviction.
Defendant also argues that the convictions for both attempt armed robbery and attempt second degree murder violate double jeopardy. He argues that because the evidence fails to support the specific intent to kill, the jury must have found him guilty of attempt second degree murder under the felony-murder doctrine. However, as previously noted, there was sufficient evidence of defendant's specific intent to kill both Mr. Burgstiner and Mr. Anderson. Therefore, there is no double jeopardy violation. This argument has no merit.
Defendant further argues that the jury charge was confusing and may have led the jury to believe they could convict defendant of attempt second degree murder if it found he was also engaged in an armed robbery. However, defense counsel failed to object to the jury charge, and is precluded from raising it on appeal. La.C.Cr.P. arts. 841; 801. In any event, we have read the jury charge, and find no merit to defendant's contention.

Sentencing
Defendant argues that his sentences must be vacated as they are excessive and the trial court failed to meaningfully consider the Louisiana Sentencing Guidelines.
However, defense counsel failed to file a motion for reconsideration of sentence as required by La.C.Cr.P. art. 881.1. Art. 881.1 provides:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
B. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
C. The trial court may deny a motion to reconsider sentence without a contradictory hearing.
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
Relying on this article, this Court has refused to consider any claims of excessiveness of sentence or the failure to comply with the sentencing guidelines in the absence of such motion, and the Supreme Court has denied writs in these cases. State v. Lee, 618 So.2d 551 (La.App. 4th Cir.), writ denied 624 So.2d 1222 (1993); State v. Hudson, 618 So.2d 539 (La.App. 4th Cir.), writs denied 623 So.2d 1334 (1993).
However, at the sentencing hearing, defense counsel orally objected "to the excessive sentence as being cruel and unusual." An oral motion has been held sufficient to preserve the right to appellate review; it need not be later supplemented in writing. State v. Caldwell, 620 So.2d 859 (La.1993); State v. Singleton, 614 So.2d 1242 (La.1993). In Caldwell, the defendant objected to excessiveness of his sentences, to the trial court's departure from the sentencing guidelines, and to particular allegations concerning his background. The court found that these oral objections were in essence an oral motion to reconsider made at the time of sentencing. The Caldwell court cites State v. Mims, 619 So.2d 1059, 1060 (La.1993), which states: *827 Under Article 881.1 the defendant must file a motion to reconsider and set forth the "specific grounds" upon which the motion is based in order to raise an objection to the sentence on appeal. However, in order to preserve a claim of constitutional excessiveness, the defendant need not allege any more specific ground than that the sentence is excessive. If the defendant does not allege any specific ground for excessiveness or present any argument or evidence not previously considered by the court at original sentencing, then the defendant does not lose the right to appeal the sentence; the defendant is simply relegated to having the appellate court consider the bare claim of excessiveness. Article 881.1 only precludes the defendant from presenting arguments to the court of appeal which were not presented to the trial court at a point in the proceedings when the trial court was in a position to correct the deficiency.
In the present case, defendant orally objected to the excessiveness of the sentence, but did not object to the trial court's departure from the sentencing guidelines. Under these circumstances, we conclude that defendant has preserved his right to appeal his sentence on the specific ground that it is constitutionally excessive, but we find that because no objection was made, oral or written, defendant is precluded from appealing on the ground that the trial court did not consider the sentencing guidelines. We will therefore not address this issue, but will determine whether the sentences are constitutionally excessive.
Defendant received the maximum sentences on all three counts, forty-five and one-half years on the attempt armed robbery count and fifty years on each of the attempt second degree murder counts. In addition, the court ordered that these sentences be served consecutively.
At the sentencing hearing, the trial court first noted the facts of the case and the nature of the injuries sustained by the victim of the shooting. The court stated that it had considered C.Cr.P. art. 894.1 "and the felony sentencing guidelines", and then it noted that defendant was 31 years old, single and unemployed. The court noted that the defendant had thirty-three arrests and the following convictions and sentences: (1) theft, one year imprisonment; (2) theft, $100.00 fine or thirty days imprisonment; (3) attempt simple burglary, six months imprisonment; (4) shoplifting, ninety days imprisonment; (5) a charge of attempt armed robbery, to which the appellant pled guilty to a lesser included offense and for which he received a ninety-day sentence; (6) possession of stolen property, ninety days imprisonment; and (7) armed robbery, nine years imprisonment. The court noted there were no mitigating circumstances to this crime, stating:
Here again, and all too frequently these days, these two predators viciously attacked their prey and attempted to murder them when resistance was shown. There is absolutely no excuse for his actions and no possible rehabilitation for this defendant. The only action appropriate and in the best interest of the public is to prevent future incident by incarcerating the defendant for as long as possible.
We have thoroughly reviewed the entire record and find that the sentences are not grossly out of proportion to the severity of the crimes so as to be considered `cruel and unusual' and constitutionally excessive.
In the present case, the trial court articulated reasons for the sentences imposed, tailoring them to the defendant and the particular offenses. Defendant has a long criminal history, and at 31 years of age had been arrested 33 times. Defendant has seven convictions, including a prior conviction for armed robbery and another for attempt armed robbery.
The trial court considered the severity of the offense of entering a well-lit parking lot and pointing a gun at Ms. Woods' head. When Mr. Burgstiner attempted to resist the robbery, both defendant and his companion shot him brutally, attempting to kill him. Further, when Mr. Anderson came to the aid of his friend, defendant pointed the gun in his face and tried to kill Mr. Anderson as well.
The record in this case shows that Mr. Burgstiner, a Houston resident, was hospitalized *828 three times for his injuries, the first time for over one month. He underwent several surgeries, and additionally sustained infections, hernias and pneumonia as a result of damage to his lungs. He also has extensive scarring which was shown to the court.
We have carefully reviewed the entire record in this case, and although we find the sentences are the maximum, under the circumstances presented, the sentences are not cruel and unusual. Although the sentences are to run consecutively, the offenses were committed on three individuals. The nature of the offenses are heinous and merit maximum sentences. We find no abuse of the discretion of the trial court in any of the sentences.
Accordingly, defendant's conviction and sentences are affirmed.
AFFIRMED.