791 So.2d 173 (2001)
STATE of Louisiana
v.
Ronnie CAMESE.
No. 2000-KA-1943.
Court of Appeal of Louisiana, Fourth Circuit.
July 11, 2001.
*175 Harry F. Connick, District Attorney, Julie C. Tizzard, Assistant District Attorney, New Orleans, LA, for plaintiff/appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for defendant/appellant.
Court composed of Chief Judge WILLIAM H. BYRNES III, MIRIAM G. WALTZER, JAMES F. McKAY III, JJ.
BYRNES, Chief Judge.
On November 13, 1996, the defendant, Ronnie Camese, was charged by bill of information with armed robbery, La.R.S. 14:64, and attempted second degree murder, La.R.S. 14:27(30.1). He was arraigned January 6, 1997, and pled not guilty. He filed a motion to suppress which was denied April 8, 1998. A twelve member jury found the defendant guilty as charged November 2, 1998. He filed a motion for new trial which was denied. He waived delays and was immediately sentenced November 13, 1998, to fifty years at hard labor without benefit of parole, probation, or suspension of sentence on the attempted second degree murder conviction and forty-nine years without benefit of parole, probation, or suspension of sentence on the armed robbery charge, with the sentences to run consecutively. He filed a motion for appeal that day. The State filed a multiple bill, but no hearing has been held.

FACTS:
On March 28, 1996, at approximately 11:30 p.m., Jamie Williams was driving his car home to the 2300 block of Murl Street from a visit to his daughter. His brother Jermaine Johnson, with whom he lived, was with him in the passenger seat. Outside the men's apartment complex, Williams stopped to insert the parking card into the security gate. The defendant approached from the back of the car and demanded the car. He put a chrome colored gun up to Williams's head. Williams recognized the defendant from the Fischer Housing Project where Williams's family *176 formerly lived. Williams called the defendant's name. He tried to give him the car. The defendant then shot him. Williams grabbed the fence to pull himself out of the way of the defendant running over him as the defendant fled in his car.
Lance Stuke, a paramedic, said he responded to the call and found the victim lying on the ground with a close range gunshot wound to his face. He was awake and alert.
Officer Keith Sholes also responded to the call. He interviewed both Johnson and Williams at the hospital. Williams told him he recognized the perpetrator as "Ronnie", a man he knew from the Fischer Housing Project, and gave a physical description. Johnson gave a physical description similar to that given by Williams.
Dr. David Chaplan said Williams suffered a gunshot wound to the jaw.
The car was located March 29, 1996 in the 1500 block of Hendee Court, about a mile from the Fischer Housing Project. A print was lifted which was unsuitable for comparison purposes.
Williams identified the defendant in a photographic lineup April 15, 1996.
At trial, Johnson said the defendant approached them as they were arriving home and demanded the car. Williams got out of the car to give it to him. Johnson ran for help and heard the shot. Johnson recognized the defendant from the neighborhood, and he identified him at trial.
Both Williams and Johnson identified the defendant at trial. Williams said the bullet remains lodged in his jaw. Williams had no criminal record and said he had not been drinking the night of the crime. Although he knew the defendant's name, he had never "hung with him."

ERRORS PATENT:
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR ONE:
The defendant argues the sentences imposed are unconstitutionally excessive. Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment."
A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4 Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983);. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with La. C.Cr.P. article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
The defendant argues the trial court failed to comply with article 894.1. However, in State v. Soraparu, 97-1027, p. 1 (La.1997), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" *177 State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentencing is appropriate only when "there appeal[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit." State v. Wimberly, 414 So.2d 666, 672 (La. 1982).
The sentences imposed are not unconstitutionally excessive.
In State v. Davis, 93-0663 (La.App. 4 Cir. 2/25/94), 633 So.2d 822, the defendant was convicted of two counts of attempted second degree murder and one count of attempted armed robbery. The trial court sentenced the defendant to serve forty-nine and one half years at hard labor on the attempted armed robbery conviction and fifty years at hard labor on each of the attempted second degree murder convictions. The defendant had prior convictions for theft, attempted simple burglary, shoplifting, attempted armed robbery, armed robbery and possession of stolen property. In Davis, the defendant attempted to rob three people and shot at them. He pointed a gun at the head of one of the victims and injured at least one of the victims. The appellate court found that the sentences imposed were not excessive.
Likewise, in State v. Pyke, 95-919 (La. App. 3 Cir. 3/6/96), 670 So.2d 713, the Third Circuit affirmed the defendant's sentence of fifty years at hard labor on his conviction for attempted second degree murder. The defendant shot the victim in the back without provocation. The court noted the defendant had one prior conviction for possession of a controlled substance in Texas.
Here, the defendant received only forty-nine and a half years on the armed robbery conviction when the maximum was ninety-nine years. He did receive the maximum for the attempted second degree murder conviction. However, the facts of the case support the sentence. The defendant approached the victim, who in fact knew him, put a gun to his head, and took his car as the victim was trying to enter his own residence. The facts suggest that the defendant was lying in wait in a premeditated fashion for someone to stop at the security gate so that he could take their car. Shockingly, even after the victim gave him the car, the defendant shot him in the head, leaving a bullet lodged in his jaw. Luckily, the victim did not die.
The defendant does not specifically argue that the sentences were excessive because they were ordered to be served consecutively. However in State v. Maxie, 30,877, p. 14-15, (La.App. 2 Cir. 8/19/98), 719 So.2d 104, 112-113, the court stated:
La.C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment *178 shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
The Louisiana Felony Sentencing Guidelines continued the statutory suggestion that concurrent sentences should be imposed if two or more criminal acts constitute parts of a common scheme. La. S.G. § 215(A)2. While the word "should" was not mandatory, the guidelines clearly suggested that a trial court specifically consider several aggravating factors which may warrant imposition of consecutive sentences. State v. Norrell, 614 So.2d 755 (La.App. 2d Cir.1993).
Concurrent sentences arising out of a single cause of conduct are not mandatory and consecutive sentences under those circumstances are not necessarily excessive. State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993); State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir. 1985); State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Williams, 445 So.2d 1171 (La.1984); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.), writ denied, 508 So.2d 65 (1987). It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988); State v. McCray, 28,531 (La.App.2d Cir.8/21/96), 679 So.2d 543. All factors in the case are to be considered in choosing whether to impose consecutive or concurrent sentences. State v. Ortego, supra; State v. Derry, supra; and State v. Beverly, 448 So.2d 792 (La.App. 2d Cir.), writ denied, 450 So.2d 951 (1984). Among the factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, defendant's apparent disregard for the property of others, the potential for defendant's rehabilitation, and whether defendant has received a benefit from a plea bargain. State v. Wilson, 28,403 (La.App.2d Cir.8/21/96), 679 So.2d 963; State v. Smith, 26,661 (La.App.2d Cir.3/1/95), 651 So.2d 890, writs denied 95-0918 (La.9/15/95), 660 So.2d 458; 95-0995 (La.1/29/97), 687 So.2d 378; 95-1598 (La.2/7/97), 688 So.2d 493.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. State v. Strother, 606 So.2d 891 (La.App. 2d Cir.1992), writ denied 612 So.2d 55 (La.1993); State v. Mims, 550 So.2d 760 (La.App. 2d Cir.1989), appeal after remand, 566 So.2d 661 (La.App. 2d Cir.), writ denied, 569 So.2d 970 (1990); State v. Thompson, 543 So.2d 1077 (La. App. 2d Cir.), writ denied, 551 So.2d 1335 (1989); State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir.1987). When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Green, 614 So.2d 758 (La.App. 2d Cir.1993).
Although the trial court did not fully articulate the factors it considered in imposing the consecutive sentences, relevant portions of the transcript of the sentencing hearing, in addition to the egregious nature of the gratuitous violence involved in the crimes of which the defendant was convicted in the instant case, provide convincing justification for the imposition of consecutive sentences:

*179 BY THE COURT:
Would you annunciate [sic] the criminal history of the Defendant?
BY MR. DILDY:
One moment, Judge. As far as convictions, Case No. 357-347, Section "A", Criminal District Court, theft between 100 to 500, July 20, 1992, said accused, Ronnie Camese, pled guilty as charged. February 11, 1992, relative to illegal discharge of a weapon, the said accused pled guilty as charged, Section "A".
Additionally, 24th Judicial District Court, May 30, 1992, Defendant pled guilty to theft between 100 to 500, and that's again a 24th Judicial District Court. Another section of 24th JDC relative to burglary of an automobile, Defendant pled guilty as charged on April 21, 1993.
Additionally, we have 21 felony and 14 misdemeanor arrests and that may include the convictions, but that's the total arrests.
BY THE COURT:
How old are you, sir?
BY THE WITNESS:
Twenty-five.
BY THE COURT:
Sir, I listened to the testimony in this trial and it's my distinct feeling that you had attempted to kill this man and take his automobile, did take his automobile.
The sentence of this Court sentences the defendant to on[e] count one to 49½ years, to count two, to 50 years, to run consecutively. And I don't often give those kind of sentences.
BY MS. THOMAS:
Your Honor, at this time
BY THE COURT:
Without benefit of probation, parole, suspension of sentence.
Considering the foregoing, we conclude that this assignment of error is without merit.

ASSIGNMENT OF ERROR TWO:
The defendant argues the motion to suppress the identification should have been granted.
In order to suppress an identification, a defendant must prove that the identification itself was suggestive and that there was substantial likelihood of misidentification as a result of the identification procedure. State v. Nogess, 98-0760 (La. App. 4 Cir. 3/3/99), 729 So.2d 132; State v. Gurley, 565 So.2d 1055, 1062 (La.App. 4 Cir.1990); citing, State v. Smith, 499 So.2d 340 (La.App. 4 Cir.1986). In State v. Neslo, 433 So.2d 73, 78 (La.1983), the Louisiana Supreme Court stated:
In reviewing an identification procedure, the court must determine whether the procedure was so unnecessarily suggestive and so conducive to an irreparable mistaken identification that the defendant was denied due process of law. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Tribbet, 415 So.2d 182 (La.1982). A lineup is unduly suggestive if the identification procedure displays the defendant so that the witness' attention is focused on the defendant. State v. Nicholas, 397 So.2d 1308 (La.1981); State v. Robinson, 386 So.2d 1374 (La. 1980).
If the court finds the identification suggestive, five factors are to be considered in determining the likelihood of misidentification as a result of the identification procedure as outlined in State v. Prudholm, 446 So.2d 729, 738 (La.1984), citing Manson:
(1) the witness's opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission *180 of the crime; (3) the accuracy of any prior description; (4) the level of the witness's certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification.
In this case, the defendant puts forth no argument as to how the identification procedure was suggestive. There is no indication in the record that the officer told Williams that a picture of the defendant was in the lineup, or that he in any way suggested that the defendant was in the lineup, or that he coerced Williams to choose a picture of the defendant or in fact any of the pictures. The defendant fails to make the threshold showing that the lineup was suggestive.
Even if the defendant could show the lineup was suggestive, there was no likelihood of misidentification. The defendant approached the victim as he was stopped at the apartment security gate. The victim could easily see the defendant through the open car window. The defendant stood right next to the victim and held a gun to his face. The victim had time to attempt to give the defendant the car, all the while having the defendant in full view. Most important of all, the victim knew the defendant not only by face but by name.
There clearly was no reason to suppress the identification, and this assignment is without merit.

ASSIGNMENT OF ERROR THREE:
The defendant argues the evidence was insufficient.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. La.R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
La.R.S. 14:27, the attempt statute, provides:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
Second degree murder is defined as the "killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1. Thus, a conviction for attempted second degree murder requires a showing that the defendant had the specific intent to kill and committed an act tending to accomplish that purpose. State v. Hawkins, 93-1260 (La.App. 4 Cir. 1/27/94), *181 631 So.2d 1288. Specific criminal intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his act. La.R.S. 14:10(1). Intent may be proven either by direct evidence or can be inferred from the circumstances of the case. State v. Pittman, 604 So.2d 172 (La.App. 4 Cir.1992). Specific intent to kill can be inferred from the fact that a defendant aims a weapon at a vital part of a victim's body and fires at close range. State v. Banks, 496 So.2d 1099 (La.App. 4 Cir.1986); State v. Pittman, supra.
Here, the defendant shot the victim in the head at close range. The facts were clearly sufficient to support a conviction for attempted second degree murder.
Armed robbery is defined as the "taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64. Here the defendant pulled a gun on the victim and took his car. The facts were clearly sufficient to support a conviction for armed robbery.
This assignment is without merit.

DECREE:
For the foregoing reasons, we hereby affirm the conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.