844 So.2d 1037 (2003)
STATE of Louisiana
v.
Johnell DEMPSEY.
No. 2002-KA-1867.
Court of Appeal of Louisiana, Fourth Circuit.
April 2, 2003.
*1038 Harry F. Connick, Orleans Parish District Attorney, Anne M. Dickerson, Assistant District Attorney, New Orleans, LA, for State of Louisiana/Appellee.
Karen G. Arena, Louisiana Appellate Project, Metairie, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MAX N. TOBIAS JR., Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The defendant, Johnell Dempsey, was charged by bill of information with four counts of armed robbery, violations of La. R.S. 14:64; he pled not guilty. Following a trial, a twelve-person jury found the defendant guilty as charged on all counts. After a hearing pursuant to the Habitual Offender Law, La. R.S. 15:529.1, the trial court found the defendant to be a second felony offender and sentenced him to serve ninety-nine years at hard labor as to count one. The court also sentenced him to serve ninety-nine years on each of the other three counts. All four sentences were imposed without the benefit of parole, probation, or suspension of sentence and were to be served consecutively with each other.

FACTS

I
Mr. Charles Shumate testified that about 11 a.m. on New Year's Day of 2002, he and his girlfriend, Berry Burnside, were walking on Royal Street toward Esplanade Avenue when a man aggressively approached him, put his arm around Mr. Shumate's shoulder, and declared, "I'm taking your money." The man wore all black clothing and a security badge. Mr. Shumate did not take the man seriously until he said, "I'm not fucking around. I'm taking your money. I have a gun." The man opened his jacket to reveal a gun. Ms. Burnside was walking in front of the two men. The robber warned her to "keep walking." Mr. Shumate handed over about thirteen dollars, which was all the money he had in his wallet. Ms. Burnside then said, "We'll give you all our money. Would you just leave us alone?" The robber told her to shut up and demanded her money. She handed him two dollars from her pocket. The robber looked at Mr. Shumate and said, "You didn't see me and you don't recognize me, do you?" Mr. Shumate answered negatively, and the robber turned and left. The couple walked to a nearby bakery and called the police to report the incident. During that afternoon, Detective George Tessier transported Mr. Shumate to the *1039 police station, and as they entered a room, the detective asked him if he recognized anyone there. Mr. Shumate identified Dempsey as the man who had robbed him and Ms. Burnside at gunpoint. Ms. Burnside did not go to the police station. Months later, Detective Tessier showed her a photo lineup, and she could not make an identification.

II
Elaine MacNeil of San Francisco, and her friend, Jennifer Fishetti of New York, were also in the French Quarter on New Year's Day of 2002. They were walking on Chartres Street near Dumaine Street shortly after noon when a man came from around the corner. Ms. MacNeil initially thought he was a police officer because he was wearing dark clothes and a jacket with an insignia. As he got near the women, he pulled out a gun and pointed it at Ms. MacNeil who was walking a bit ahead of Ms. Fishetti. Ms. MacNeil said, "No" in a very loud voice when the gun was pointed at her. The gunman then demanded her money. Ms. Fishetti, who had caught up with her friend and realized what was happening, handed him three hundred dollars. The gunman "started jabbing the gun" at Ms. MacNeil while saying "[g]ive me your money now! Give me your money or I'm going to hurt you!" She then gave him about forty dollars. The robber said, "Just walk." The women did. Once safely away from their attacker, they entered a nearby business and called 911 to report the crime. While the police were taking information from the women, they received a call of an apprehension of a suspect. The women were transported nearby to Bourbon Street, where the suspect was presented to them. Both women identified Dempsey as the man who robbed them at gunpoint.
Prior to his being identified, Dempsey was arrested inside of the Bourbon Pub, which is located at the intersection of St. Ann Street and Bourbon Street. The arrest occurred at about 12:25 p.m. Dempsey matched the description that was broadcast over the police radio. Additionally, an employee of the establishment had informed the arresting officer that Dempsey was armed. After the apprehension, an incidental search of his person revealed a gun, two small swords, a pair of handcuffs, and $305.00 in currency.
Dempsey was transported to central lock up after the identification procedures where he was charged with the armed robbery offenses. During that time, it was learned that he had a 1997 felony conviction for issuing worthless checks in Jefferson Parish.

ASSIGNMENT OF ERROR
In a single assignment of error, the defendant argues that the four maximum sentences of ninety-nine years each imposed consecutively are not justified in this case.

APPLICABLE LAW AND DISCUSSION
Article I, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La.App. 4 Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light *1040 of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983).
If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If the judge records the factors affecting his sentencing decision, the sentence should not be set aside as excessive unless it is grossly disproportionate to the offense or represents nothing more than the needless infliction of pain and suffering. State v. Pike, 426 So.2d 1329, 1335 (La.1983).
La.C.Cr.P. art. 883 provides, in part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
Louisiana law favors concurrent sentences; however, a trial court retains the discretion to impose consecutive sentences on the basis of other factors, including the offender's past criminality, violence in the charged crimes, or the risk that the defendant poses to the general safety of the community. State v. Thomas, 98-1144 (La.10/9/98), 719 So.2d 49. When consecutive sentences are imposed for crimes arising out of the same act, the trial court must articulate particular justification for such a sentence beyond a mere articulation of the standard sentencing guidelines set forth in La.C.Cr.P. art. 894.1. State v. Pittman, 604 So.2d 172 (La.App. 4 Cir. 1992). Consecutive sentences for crimes arising out of the same act are not per se excessive if other appropriate factors are considered. Id.
In this case, the defendant engaged in two separate and distinct acts or transactions, i.e., two separate armed robberies that occurred at different times and locations and involved different sets of victims. These separate acts of armed robbery logically cannot be considered a part of a common scheme or plan. In addition to considering the sentencing guidelines set forth in La.C.Cr.P. art. 894.1, the trial court articulated particular reasons for imposing consecutive sentences for each individual count within the two distinct criminal acts or transactions. Specifically, the trial judge noted the following:
(1) the defendant's past criminal history;
(2) the risk that the defendant posed to the general safety of others;
(3) the defendant manifested deliberate cruelty to each set of the victims;
(4) the victims, who were tourists in the French Quarter on New Year's Day, were particularly vulnerable;
(5) the defendant used his position as a security officer to facilitate the commission of the crime;
(6) the defendant's threats of violence created a risk of great bodily harm to more than one person during each act or transaction; and,
(7) the defendant used a dangerous weapon, a gun, which he was authorized to possess, to commit the offenses.
The trial court also noted the absence of any mitigating factors to justify any sentence other than the harshest type for this second felony offender. Thus, a review of *1041 the record in this case indicates no abuse of the trial court's discretion in sentencing.

CONCLUSION
Accordingly, the defendant's convictions and sentences are affirmed.
AFFIRMED.