NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-487

STATE OF LOUISIANA

VERSUS

JIMMY JAMES MACK

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 286906
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and J. David Painter, Judges.

AFFIRMED.

James C. Downs
District Attorney - 9th JDC
701 Murray Street
Alexandria, LA 71301
Counsel forAppellee:
    State of Louisiana

W. T. Armitage  Jr.
Assistant District Attorney
P. O. Box 342
Alexandria, LA 71309-0342
Counsel forAppellee:
    State of Louisiana

G. Paul Marx

Attorney at Law
P. O. Box 82389
Lafayette, LA 70598-2389
Counsel for Defendant/Appellant:
    Jimmy James Mack

Jimmy James Mack
Louisiana State Penitentiary
Angola, LA 70712
Pro Se Defendant/Appellant

**Pickett, J.**

<u>FACTS:</u>

On the night of February 7, 2007, the victim, Curtis Dupuy, met the defendant, Jimmy James Mack, at the home of Timmy Sherman. Sherman knew both Dupuy and the defendant, but the latter two men had not met before that night. When Sherman realized his guests were smoking crack cocaine, he told them to leave. The pair left but then began driving around in the victim's truck selling crack. The defendant told the victim he knew someone who would buy their remaining supply of crack. Dupuy parked his truck at a house designated by the defendant, and the two men walked to the rear of the building. When the defendant's knock went unanswered, the victim turned to leave. At that point, the defendant produced a knife and stabbed the victim four times in the torso. As Dupuy backed into an area with more light, the door of a nearby residence opened, and the defendant fled the scene. The victim drove himself to an area hospital. Medical testimony showed that his injuries included a lacerated liver.

On May 29, 2007, the Rapides Parish District Attorney's Office filed a bill of information charging the defendant with attempted second degree murder, a violation of La.R.S. 14:27 & 14:30.1, and with armed robbery, a violation of La.R.S. 14:64. Trial began on December 11. On December 12, a jury found the defendant guilty as charged.

On December 19, 2007, the trial court sentenced the defendant to ten years at hard labor for armed robbery, and to forty-nine years at hard labor for attempted second degree murder. The sentences are consecutive. The defendant made an oral motion to reconsider, which the trial court denied.

1

The defendant now seeks review by this court. He assigns two errors through counsel. The defendant has also filed a pro se brief, in which he assigns four errors.

## ASSIGNMENTS OF ERROR:

1. The verdict in this case is based on insufficient evidence where the sole testimony was from a confirmed drug dealer who was also smoking crack on the night in question, and did not identify the defendant until later when he claims to have seen him around town.

2. The sentence of a total 59 years was constitutionally excessive and consecutive terms were not justifiable where the same facts were used for armed robbery and attempted second degree murder. The sentences would have to be reduced and made concurrent in order to avoid constitutional excessiveness.

## Pro Se Assignments of Error:

1. Improper jury charge.

2. Ineffective assistance of counsel.

3. Illegal sentence.

4. Defective bill of information.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR NO. 1:

In his first assignment of error, the defendant argues the evidence adduced at trial was insufficient to support his conviction for attempted second degree murder. He argues the victim's testimony was not credible, as Dupuy was "a confirmed drug dealer who was also smoking crack on the night in question, and did not identify the defendant until later when he claims to have seen him around town."

2

As this court has previously explained:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

As noted earlier, the defendant was convicted of attempted second degree murder and armed robbery. The defendant has chosen to focus his argument on the victim's credibility and not on whether there was evidence as to the elements of the crime.

On direct examination, the victim admitted using and selling crack cocaine on the night of the offense. He also described the stabbing incident in the following colloquy:

A. I left him collateral to get a quarter ounce of crack.

Q. You say collateral, what is that?

A. I left him a ring, one of my diamond rings.

Q. Okay. We cut it into rocks. Me and Mr. Mack rode around selling it. He brought me to a couple of places in Pineville to sell some. We went to [a] place in Alex to sell some, at which time we had parked the truck and run out of gas and we had to call, I think his wife. And Timmy's girlfriend come and picked us up and brought us to the gas station. I got some gas, put gas in the truck. I -- he told me that he knew

3

somebody that would buy the rest of it from us. We wouldn't have to worry about riding around no more. We went to a house off of Third Street on this little back street. I noticed they had a white truck on the side of the house. The house had boards in the front of it. Me and him got out of the truck. I locked the truck. I always lock my truck. We walked to the back of the house. He knocked on the door and he knocked again. Nobody answered and I told him, no, don't worry about it, let's just get out of here. I turned to walk off the porch and then that's when he stabbed me.

. . . .

A. He stabbed me three times on my right side, one time on my left. It was dark back there. I still -- I was backing up. I got into the light. He asked me for my money. I give him the money. He asked me for the crack. I threw the crack. It went into like a shaded area, I guess you'd say from light to dark. He kept demanding that I go to the dark -- to where it was dark and pick up the crack and give it to him. I wouldn't do it. I kept backing up -- no, I'm not doing it, I'm not doing it, I'm not doing it. He asked me for my cell phone or -- well, wait, he was coming at me with the knife. He said that he couldn't leave no witnesses. I said, I'm not a witness, take it all -- here. He said, give me your cell phone so you can't call no help. I give him my cell phone. He turned -- across the street in a house somebody opened a door. He took off running. I don't know where he went because I waited a few minutes. I acted like I was walking up the street, and then I turned around and went back to my truck. I got in my truck and drove myself to the hospital.

Q.     How much money did you have?

A.     Sir, I couldn't say exactly how much. I don't know. I know it was $50.00 or over, I know that.

This court noted in a recent case:

> The evidence needed to convict Defendant came from the Victim himself. Defendant took the stand and attempted to establish an alibi and shift the blame to Dante Williams and to the Victim himself. In convicting Defendant, the jury clearly chose to believe the victim. As the jurisprudence cited earlier shows, such credibility assessments are not to be second-guessed by reviewing courts.

> This court has explained:

>> As mentioned in *Kennerson*, credibility assessments are within the province of the fact-finder, in this case the jury. A jury may "accept or reject, in whole or in part," any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 28. Clearly, the jury believed

4

the victim's version of events, and Hypolite's brief offers no concrete reason why the jury's conclusion should be considered unreasonable. This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.

In the present case, there was no indication that Ms. Chatman was unable to objectively perceive events, although during cross-examination she testified that she had consumed two twenty-two-ounce beers while visiting her friend's house earlier in the evening. It was not clear exactly when, or over what a period, she drank the beers. The testimony did not indicate that she was intoxicated, or otherwise unable to objectively perceive events, at the time of the offense.

*State v. Hypolite*, 04-1658, pp. 4-5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La.9/22/06), 937 So.2d 381.

In the present case, the Victim admitted that he had taken one prescription Lortab for pain and had inhaled "two or three lungs full" of marijuana on the morning of the shooting. However, as in *Hypolite*, the testimony did not indicate the Victim was unable to objectively perceive events at the time of the shooting.

*State v. Smith*, 07-1384, pp. 6-7 (La.App. 3 Cir. 5/28/08), 984 So.2d 238, 242-43.

In the present case, the victim did not testify that his senses were impaired during the offense at issue. During cross-examination, the following colloquy occurred:

Q.  I have - excuse me. I have no experience, so two rocks, gives you a real good buzz going?

A.  I don't know how to explain it. It -- it doesn't put you in a daze. It makes you more aware. It makes -- it heightens your senses, it gives you a good feeling, but you know your surroundings, you know. It's not like drinking alcohol, where you stagger around and -- and you don't really know what's going on.

5

During the police investigation of the offense, the victim identified the defendant's picture in a photographic line-up. He testified that the defendant came to the hospital and came to his apartment complex more than once after the incident. Eventually, the victim's girlfriend was able to take down a license plate number that helped police learn the defendant's full name, which the victim did not know at the time of the offense. After learning the defendant's name, a detective composed the photographic line-up.

As the record does not indicate that the victim was unable to objectively perceive events as they occurred, this assignment lacks merit.

**ASSIGNMENT OF ERROR NO. 2:**

In his second assignment, the defendant that argues his total incarceration, fifty-nine years at hard labor, is excessive because the trial court ordered his two sentences to run consecutively, even though the two offenses stemmed from the same set of facts. At the sentencing hearing, trial counsel filed an oral motion to reconsider sentence. His only argument was that the sentences were excessive. The court immediately denied the motion. Although counsel indicated that he might follow up with a written motion, there is no such motion in the record. Thus, the defendant is limited to review of the sentences for constitutional excessiveness, and his arguments regarding the quality of the evidence supporting his sentences will not be addressed. La.Code Crim.P. art. 881.1(E).

On appeal, the defendant does not argue that his ten-year sentence for armed robbery is excessive. However, he argues that his forty-nine-year sentence for attempted second degree murder is excessive.

6

The analysis for such claims is well-settled:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (*quoting State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

> The fifth circuit, in [*State v.*] *Lisotta*, [98-648 (La.App. 5 Cir. 12/16/98),] 726 So.2d [57] at 58, [*writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183,] stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

> 1. The nature of the crime,

> 2. The nature and background of the offender, and

> 3. The sentence imposed for similar crimes by the same court and other courts.

*Whatley [I]*, 867 So.2d at 958-59(first two alterations in original).

*State v. Whatley*, 06-316, pp. 4-5 (La.App. 3 Cir. 11/2/06), 943 So.2d 601, 605 ,*writ denied*, 06-2826 (La. 8/31/07), 962 So.2d 424.

In the present case, the following colloquy took place at the sentencing hearing:

THE COURT:

All right. We're here today for sentencing on Mr. Jimmy James Mack. His date of birth is August the 17th of 1968. So that means that you're 39 years old, sir.

The records of the Ninth Judicial District Court reflect that you were convicted on November 18, 1988, for the charge of aggravated criminal damage to property, which is a crime of violence. It shows that you were convicted May the 6th of 1997, of the charge of armed robbery. And it shows that this offense occurred April 26th of 2007. This is an armed robbery and an attempted second-degree murder that you were convicted of.

You have pending against you at this time an issuing worthless checks under $300.00 [charge]. I don't know if that's set for trial or arraignment, or whatever, but that's the least of your troubles right now.

In reviewing the sentencing guidelines of Article 894.1, I find that there is an undue risk during the period of suspended sentence or probation that you would commit another crime, although you're not entitled to a suspended sentence or probation for either one of these offenses. I do find that you're in need of correctional treatment or [a] custodian environment that can be provided most effectively by your commitment to an institution. And, also, I believe that a lesser sentence would deprecate the seriousness of your crime.

I have looked at the aggravating factors listed in Article 894.1(B), and I find that the following aggravated factors apply: No. 1, No. 10, No. 18, and No. 19, and any other relevant aggravating circumstances that they can think of?

MR. VAN DYKE:

No, Your Honor.

THE COURT:

All right. I have two that I've thought of. One of them, sir, was that you stalked the victim based upon the testimony of the victim. You went to the hospital where he was recuperating and you also went to his apartment. Those are two instances after this happened that I think are aggravating, especially when the victim remembered that you said at the time of the stabbing that you didn't want to leave any witnesses. So you placed him in fear of bodily harm after you'd already done -- after you'd already stabbed him because of the statement, you didn't want to leave any witnesses.

8

I've looked at the mitigating factors and I cannot find one mitigating factor in the evidence that I have in front of me.

Mr. Kutch, do you have mitigating factors?

MR. KUTCH:

I have none that I have, but if Mr. Mack wishes to address the Court in regards to any mitigating factors or anything in regards to your sentence?

MR. CURTIS DUPUY [sic]:

No.

The court's reasoning amply sets forth the first two factors of *Whatley* and *Lisotta*. The aggravating factors were referred to numerically by the trial court. They are explained in La.Code Crim.P. art. 894.1:

B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:

(1) The offender's conduct during the commission of the offense manifested deliberate cruelty to the victim.

. . . .

(10) The offender used a dangerous weapon in the commission of the offense.

. . . .

(18) The offender foreseeably endangered human life by discharging a firearm during the commission of an offense which has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and which, by its very nature, involves a substantial risk that physical force may be used in the course of committing the offense.

(19) The offender used a firearm or other dangerous weapon while committing or attempting to commit an offense which has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and which by its very nature, involves a substantial risk that physical force may be used in the course of committing the offense.

9

Although the eighteenth factor does not apply to the present case, the nineteenth factor

is very similar and applies to the current facts.

Regarding the third factor of *Whatley* and *Lisotta*, we note the following

language from the fourth circuit:

> The sentences imposed are not unconstitutionally excessive.
>
> In *State v. Davis*, 93-0663 (La.App. 4 Cir. 2/25/94), 633 So.2d 822, the defendant was convicted of two counts of attempted second degree murder and one count of attempted armed robbery. The trial court sentenced the defendant to serve forty-nine and one half years at hard labor on the attempted armed robbery conviction and fifty years at hard labor on each of the attempted second degree murder convictions. The defendant had prior convictions for theft, attempted simple burglary, shoplifting, attempted armed robbery, armed robbery and possession of stolen property. In *Davis*, the defendant attempted to rob three people and shot at them. He pointed a gun at the head of one of the victims and injured at least one of the victims. The appellate court found that the sentences imposed were not excessive.
>
> Likewise, in *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713, the Third Circuit affirmed the defendant's sentence of fifty years at hard labor on his conviction for attempted second degree murder. The defendant shot the victim in the back without provocation. The court noted the defendant had one prior conviction for possession of a controlled substance in Texas.
>
> Here, the defendant received only forty-nine and a half years on the armed robbery conviction when the maximum was ninety-nine years. He did receive the maximum for the attempted second degree murder conviction. However, the facts of the case support the sentence. The defendant approached the victim, who in fact knew him, put a gun to his head, and took his car as the victim was trying to enter his own residence. The facts suggest that the defendant was lying in wait in a premeditated fashion for someone to stop at the security gate so that he could take their car. Shockingly, even after the victim gave him the car, the defendant shot him in the head, leaving a bullet lodged in his jaw. Luckily, the victim did not die.

*State v. Camese*, 00-1943, pp. 4-5 (La.App. 4 Cir. 7/11/01), 791 So.2d 173, 177, *writ*

*denied*, 01-2324 (La. 8/30/02), 823 So.2d 937. Likewise, the sentence at issue in the

present appeal is not excessive.

Regarding the consecutive nature of the sentences, this court has stated:

Challenges to the imposition of consecutive sentences have been considered by this court in reviews for bare excessiveness. *State v. Day*, 05-287 (La.App. 3 Cir. 11/2/05), 915 So.2d 950. In *State v. Vollm*, 04-837 (La.App. 3 Cir. 11/10/04), 887 So.2d 664, this court stated that the defendant's failure to present the issue of the consecutive nature of his sentences in his motion to reconsider relegated him to a bare claim of constitutional excessiveness on appeal. However, we went on to review the imposition of consecutive sentences, finding the trial court did not abuse its discretion in imposing them.

In *Vollm*, additional factors to be considered when assessing whether the trial court abused its discretion in imposing consecutive sentences were identified:

> Louisiana Code of Criminal Procedure Article 883 states in relevant part: "If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively." (Emphasis added.) The Louisiana Supreme Court has recognized that although concurrent sentencing is favored, it is within the trial judge's discretion to impose sentences consecutively based on factors including the defendant's criminal record, the severity or violent nature of the crimes, or the danger the defendant poses to the public. *State v. Thomas*, 98-1144 (La.10/9/98), 719 So.2d 49.

> Where the trial court does impose consecutive penalties, it "must articulate particular justification for such a sentence beyond a mere articulation of the standard sentencing guidelines set forth in La.C.Cr.P. art. 894.1" *State v. Merritt*, 03-946, p. 28 (La.App. 3 Cir. 3/17/04), 875 So.2d 80, 97 (*quoting State v. Dempsey*, 02-1867, p. 5 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037, 1040, *writ denied*, 03-1917(La.6/25/04), 876 So.2d 823).

*Id.* at 669.

The two offenses in this case arose out of the same course of conduct; therefore, concurrent sentences are favored. However, the trial court had the discretion to impose consecutive sentences. Defendant initiated a violent attack of four armed men against two unarmed men in which the first victim, Mr. Wiley, was killed, and he exhibited little or no remorse to the trial court for his actions. We find no error with the trial court's imposition of consecutive sentences.

*State v. Runyon*, 06-823, pp. 13-14 (La.App. 3 Cir. 12/6/06) 944 So.2d 820, 830-31, *writ denied*, 07-49 (La. 9/21/07), 964 So.2d 330.

The *Runyon* court elected to affirm that defendant's sentences, despite the lack of a specific articulation to support their consecutive nature. We choose to do the same. The offense at issue involved a violent attack. At trial, the victim testified that the stabbing left part of his liver hanging out and that part of the organ is now gone. By the time of the trial, he had also lost his gall bladder. A doctor described the injury "as a vicious stab wound." The defendant had a prior conviction for armed robbery and apparently followed or watched the victim at various times after the stabbing. We find no error with the trial court's imposition of consecutive sentences.

## PRO SE ASSIGNMENT OF ERROR NO. 1:

In his first pro se assignment of error, the defendant argues that the court's charge to the jury was incorrect. First, he claims the court did not properly charge the jury regarding the lesser-included offense of aggravated battery. The trial court informed the jury that it could find the defendant guilty of aggravated battery as a lesser offense. Later, the court defined aggravated battery as follows:

> Another responsive verdict is aggravated battery. That is the intentional use of force of violence upon the person of another with a dangerous weapon. A dangerous weapon includes any instrumentality, which in the manner in which it is used is calculated or likely to produce death or great bodily harm.

This definition comports with the definition set forth by La.R.S. 14:34: "[a]ggravated battery is a battery committed with a dangerous weapon," by La.R.S. 14:33: "[b]attery is the intentional use of force or violence upon the person of another . . .," and by La.R.S. 14:2(3): " '[d]angerous weapon' includes any . . . instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily

12

harm." Since the definitions given by the court are in accord with the relevant statutory definitions, this part of the defendant's assignment fails. Further, the defendant does not allege any specific error in the definitions given by the court.

In the second part of his argument, the defendant states: "The Judge clearly confused the jury by stating . . . that If The Jury was convinced beyond a Reasonable Doubt that the Defendant Is Guilty of Second Degree Murder the Form of your Verdict should Be read 'we the Jury Find the Defendant Guilty of Attempted Second Degree Murder[.]'" (Capitalizations in original). The language at issue appears at page five of the jury charge: "IF YOU ARE CONVINCED BEYOND A REASONABLE DOUBT THAT THE DEFENDANT IS GUILTY OF SECOND DEGREE MURDER, THE FORM OF YOUR VERDICT SHOULD BE: 'WE, THE JURY, FIND THE DEFENDANT GUILTY OF ATTEMPTED SECOND DEGREE MURDER.'" Apparently, the trial court read this passage to the jury without realizing the discrepancy. Before the jury retired for deliberation, the court corrected part of its instructions regarding armed robbery but not the attempted murder charge.

We note that after the state rested its case-in-chief, the court mentioned the jury charge, and the following colloquy occurred:

MR. KUTCH:

> Yes, Your Honor. I'd like about 15 minutes to get my thoughts collected. It's a good time for a break.

THE COURT:

> No, we just had a break. It's not a good time for a break.

> Are you thinking about submitting it to -- why don't y'all approach, because I have a jury charge here.

> [DISCUSSION HELD OFF THE RECORD]

13

THE COURT:

> Just a very short recess because I would like to have this submitted to you. We are going to have some witnesses for the defendant, so a very short recess. If you would, go back to the jury room. Please don't discuss the case.

[THE JURY EXITS THE COURTROOM]
[THE COURT IS IN RECESS]

THE COURT:

> Mr. Kutch, we're now in the defendant's case, if you would call your first witness, sir.

MR. KUTCH:

> Detective Green.

Thus, there was no objection to the jury charge at that point, none when the trial court read the passage at issue, and none at the close of the instructions. Since the defendant failed to contemporaneously object to the jury charge, as required by La.Code Crim.P. arts. 801 and 841, we find the defendant has not preserved this argument for review.

## PRO SE ASSIGNMENT OF ERROR NO. 2:

In his second pro se assignment, the defendant argues that his trial counsel was ineffective for failing to object or move for a mistrial during the jury instructions as discussed in the previous assignment.

The general analysis for such claims is well-established:

> In arguing this issue, the defendant . . . asserts that his trial counsel was ineffective because she failed to introduce several important and relevant documents into evidence and failed to object to prejudicial testimony given by Dr. Elias. He asserts that these errors were of such significance that the verdict would have been different had they not occurred.

> > Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an

14

application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. *State v. Prudholm*, 446 So.2d 729 (La.1984); *State v. Johnson*, 557 So.2d 1030 (La.App. 4 Cir.1990); *State v. Reed*, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. *State v. Seiss*, 428 So.2d 444 (La.1983); *State v. Ratcliff*, 416 So.2d 528 (La.1982)*; State v. Garland*, 482 So.2d 133 (La.App. 4 Cir.1986); *State v. Landry*, 499 So.2d 1320 (La.App. 4 Cir.1986).

The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller*, 454 So.2d 119 (La.1984). *The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency.* Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland, supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La.App. 4 Cir.1992).

*State v. F.B.A.*, 07-1526, pp. 8-9 (La.App.3 Cir. 5/28/08), 983 So.2d 1006, 1013 (emphasis ours).

Thus, if an error committed by counsel was not so serious that it contributed to an erroneous verdict, then justice was not thwarted, *i.e.*, the error was harmless.

[Louisiana Code of Criminal Procedure] Article 921 now provides:

A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.

15

The history of Louisiana's harmless error rule makes clear that there has been one common directive: appellate courts should not reverse convictions for errors unless the accused's substantial rights have been violated. This comports with the general theory that "appeals in criminal cases are not granted merely to test the correctness of the trial court's ruling, but only to rectify injuries caused thereby." *State v. Saia*, 212 La. 868, 876, 33 So.2d 665, 668 (1947), citing *State v. Cullens*, 168 La. 976, 123 So. 645, 648 (1929).

This Court adopted the federal test for harmless error announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), as a practical guide for determining whether substantial rights of the accused have been violated. *See State v. Gibson*, 391 So.2d 421 (La.1980). *Chapman* tests whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24; 87 S.Ct. at 828. An error did not "contribute" to the verdict when the erroneous trial feature is unimportant in relation to everything else the jury considered on the issue. *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991), overruled as to standard of review for erroneous jury instructions in *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

*Chapman* was refined in *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The *Sullivan* inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.*, 508 U.S. at [279], 113 S.Ct. at 2081. This Court adopted the *Sullivan* refinement of *Chapman*. *See State v. Code*, 627 So.2d at 1384; *State v. Bourque*, 622 So.2d at 241 fn. 20.

*State v. Johnson*, 94-1379, pp. 13-14 (La. 11/27/95), 664 So.2d 94, 100.

The relevant portions of the jury instructions, quoted in the previous assignment, erroneously contain references to the charge of second degree murder before correctly referring to the correct charge of attempted second degree murder. These references were unlikely to have confused the jury, since the live victim testified at trial. The defendant's argument regarding the portion of the charge explaining aggravated battery is unclear. He does not explain how that portion of the charge would have confused the jury. Hence, it appears "beyond a reasonable doubt

that the error complained of did not contribute to the verdict obtained." Accordingly, this issue lacks merit.

The defendant also argues that trial counsel should have moved for a mistrial, but he does not contend that a mistrial should have been granted. Rather, he argues that a mistrial motion would have alerted the trial court to the problem so that it could admonish the jury to disregard the erroneous instruction, then deliver a correct instruction. Admonitions are governed by La.Code Crim.P. art. 771:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

> (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or

> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

As noted earlier, the erroneous statements in this case were unlikely to have confused the jury. The court made an earlier mis-statement, then corrected it:

> Second degree murder is the killing of a human being when the offender has specific intent to kill or when the offender is engaged in the perpetration or attempted perpetration of an armed robbery.

> He is charged as I said earlier, with an attempted second-degree murder, not second-degree murder. So the State would have to prove that he attempted to commit this crime. . . .

The trial court's clarification, combined with the obvious fact that the victim was alive, made the nature of the charged offense clear: attempted second degree murder

17

rather than second degree murder.  Also, the trial court repeatedly explained that aggravated battery was among the possible responsive verdicts.  Also, we note that the jury did not make any inquiries seeking clarification of the law regarding either attempted murder or aggravated battery.  Thus there is no indication in the record that confusion arose from the erroneous instruction.

For the reasons discussed, this assignment lack merit.

**PRO SE ASSIGNMENT OF ERROR NO. 3:**

In this assignment, the defendant argues that his sentence was illegal because the trial court considered factors that were not proven.  This is not a true "illegal sentence" claim.  As this court has explained:

> In *State v. Moore*, 93-1632, p. 3 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, 563, *writ denied*, 94-1455 (La.3/30/95), 651 So.2d 858, this court stated: "An illegal sentence is one not 'authorized or directed by law.' *State v. Johnson*, 220 La. 64, 55 So.2d 782 (1951)."  In *State v. Gedric*, 99-1213, p. 3 (La.App. 1 Cir. 6/3/99), 741 So.2d 849, 851-52, *writ denied*, 99-1830 (La.11/5/99), 751 So.2d 239, the court explained:
>
>> Only those claims relating to the legality of the sentence itself under the applicable sentencing statutes may be raised in a motion to correct an illegal sentence.  *See State v. Parker*, 98-0256 (La.5/8/98); 711 So.2d 694, 695; *State ex rel. Stepter v. Whitley*, 93-2346 (La.10/13/95), 661 So.2d 480.
>
>> In the instant matter, the Defendant was sentenced to four years at hard labor with two years suspended, and two years to be served.  The maximum sentence for violating La.R.S. 40:966(E)(2) is five years with or without hard labor and a $2,000.00 fine.  The Defendant was sentenced within the range of the offense for which he pled guilty; thus, his sentence is not illegal.

*State v. Mayes*, 07-1500, pp. 5-6 (La.App. 3 Cir. 4/30/08), 982 So.2d 265, 269.

The defendant does not allege that the sentences exceed the parameters of the applicable statutes.  Instead, he attacks factors the trial judge considered in formulating the sentences and the terms imposed.  Such arguments would properly be

18

classified as excessive sentence claims. We have already determined the sentence imposed was not excessive. This argument, therefore, also lacks merit.

**PRO SE ASSIGNMENT OF ERROR NO. 4:**

The defendant's final assignment of error is not clear, but he appears to argue that the bill of information incorrectly charged him with an offense involving a peace officer. This is incorrect. There is no reference to a peace officer, or to a statute involving peace officers, on the bill. This assignment lacks merit.

**CONCLUSION:**

The defendant's convictions and sentences are affirmed.

**AFFIRMED.**