# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-287

**STATE OF LOUISIANA**

**VERSUS**

**TERRANCE MOUTON  AKA
TERRENCE MOUTON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 55101
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ELIZABETH A. PICKETT
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and David Kent Savoie, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Terrance Mouton**

**Keith A. Stutes**
**District Attorney, Fifteenth Judicial District**
**Ted L. Ayo**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**PICKETT, Judge.**

## FACTS

The following factual basis was recited by the state at sentencing:

According to the offense report submitted by the Abbeville Police Department, on February 4th of 2012, at approximately 11:48 AM, Officer Eugene Rougeaux responded to a domestic disturbance call at 807 Northeast Street in Abbeville. Likesa Mouton stated that her husband, Terrance Mouton, tried to cut her with a knife and was in the back bedroom. Terrance Mouton exited the bedroom while Officer Rouge [sic] was speaking to Likesa Mouton. Officer Rougeaux told Terrance Mouton to come to him and that he wanted to speak to him. Officer Rougeaux informed Terrance Mouton that he would pat him down for weapons and for Mouton to turn around.

As soon as Officer Rougeaux touched Mouton, Mouton ran around the coffee table. Officer Rougeaux grabbed Mouton by the shirt and pinned him to a wall while Mouton appeared to be reaching for a weapon of some kind in his pants pocket. Mouton refused to be patted down and continued to struggle against Officer Rougeaux. Mouton pushed Officer Rougeaux backwards, where both Terrance Mouton and Officer Rougeaux ended up outside the residence. Mouton then started to fight with Officer Rougeaux and broke his body microphone in the process.

Mouton then took off running towards the Valero convenience store at the corner of Veterans Memorial Drive and State Street. Officer Rougeaux broadcast over the radio, and Sergeant William Spearman, who was at McDonald's, noticed the described subject running in the parking lot of the Valero.

Terrance Mouton entered a 2006 GMC Sierra truck driven by Jillian Cauthron that had stopped at the Valero for gasoline and snacks for children. The three children - - R.C., age ten, G.R., age 11; and P.R., age nine - - were in the vehicle while the adult, Jillian Cathorne [sic], was inside the store paying for the items.

Mouton stole the truck with the children inside headed west on Highway 14 and ran the red light on South State Street. It was raining very heavily because of a thunderstorm in the area. Officer Spearman followed the vehicle. The vehicle turned north on Highway 167, and the following officers lost sight due to the heavy rain.

About a half a mile ahead, Officer Jonathan Touchet observed traffic stopped due to a black smoking truck that had been wrecked into a tree. A black male subject matching the description of the

suspect was located in a vehicle that was stopped in front of Officer Touchet's unit.

Dominique Rice pointed to the back seat of the vehicle saying, he's back there. Officer Touchet opened the door and pulled Mouton out of the vehicle to place him into handcuffs. Dominique Rice indicated she stopped her vehicle because of the accident when an unknown black male jumped into her vehicle and demanded to be brought to Maurice.[1]

The front passenger in Rice's vehicle took the keys out of the ignition and refused. Seconds later Officer Touchet approached the vehicle and apprehended Terrance Mouton. Three juveniles were also in Ms. Rice's vehicle.

The officers approached the wrecked vehicle and observed three young hysterical children with injuries. The truck that Terrance Mouton took from the Valero ran into a tree. One child had to be extracted from the vehicle.

The three children were transported by emergency services to a hospital in Lafayette for medical care due to the injuries sustained in the accident. Terrance Mouton was also transported to a hospital for medical care.

Subsequent medical information indicated that P.R., age nine, had internal injuries; R.C., age ten, had a fractured skull; and G.R., age 11, had both his legs broken, along with damage to his eyes.

Following the recovery and aid rendered relative to the carjacking, Likesa Mouton provided a statement that Mouton pushed her, choked her, and did not allow her to leave the residence while threatening her with a knife, and that he slashed the knife at her but missed.

On March 29, 2012, the defendant, Terrance Mouton, was charged by bill of information with five different counts: 1) Count one – Carjacking, a violation of La.R.S. 14:64.2; 2) Count two – Attempted carjacking, a violation of La.R.S. 14:27 and 14:64.2; and 3) Counts three, four and five – Second degree kidnapping, violations of La.R.S. 14:44.1. The defendant entered pleas of not guilty to the

---

[1]In his statement to the trial court at sentencing, the defendant claimed that he did not abandon the three victims after he wrecked the vehicle. The defendant claimed that he jumped into the backseat with the victims, held them, and prayed for them.

charges on April 26, 2012. Thereafter, on December 10, 2012, the trial court ordered a sanity commission and stayed the proceedings. On February 27, 2014, however, the defendant was found capable of standing trial.

On July 16, 2014, the defendant withdrew his previous pleas of not guilty and entered no contest pleas to one count of carjacking and three counts of second degree kidnapping. In exchange, the state agreed to dismiss count two, attempted carjacking, and all counts in lower court docket numbers 55102 and 55103.[2] The trial court ordered a Presentence Investigation (PSI) report, and on December 15, 2014, the trial court sentenced the defendant to the following sentences: Carjacking – ten years at hard labor, without benefit of probation, parole, or suspension of sentence; and Second Degree Kidnapping (3 counts) – ten years at hard labor on each count, without benefit of probation, parole, or suspension of sentence. The trial court ordered all sentences to run consecutively to each other, for a total sentence of forty years at hard labor, without benefit of probation, parole, or suspension of sentence.

The defendant filed a Motion for Appeal and Designation of Record that was granted by the trial court on January 15, 2015. Pursuant to that motion, the defendant's appellate counsel filed a brief in this court, alleging two assignments of error regarding the sentences imposed. [3]

---

[2] The charges at issue proceeded under lower court docket number 55101; the bills bearing docket numbers 55102 and 55103 included a total of five counts, including domestic battery by strangulation, false imprisonment, aggravated assault, resisting a police officer by force, and battery on a police officer.

[3] Pursuant to a *pro se* "Motion for Leave of Court to Supplement the Appellate Attorneys Original Brief," this court sent a copy of the record to the defendant and allowed him until June 11, 2015, to file a brief. No *pro se* brief was filed.

## ASSIGNMENTS OF ERROR

1.  The trial court's imposition of consecutive sentences totaling forty years at hard labor without benefit of probation, parole, or suspension of sentence violates the Eighth Amendment of the Constitution of the United States and La.Const.Art. I, § 20.

2.  Trial counsel rendered ineffective assistance of counsel by failing to file a motion to reconsider the sentences to preserve the issue of the excessiveness of the sentences.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

We find the commitment order requires correction. Both the sentencing transcript and the court minutes reflect that the defendant's sentences for second degree kidnapping were imposed without the benefit of parole, probation, or suspension of sentence. However, the commitment order does not indicate this. Accordingly, the trial court is ordered to correct the commitment order to accurately reflect the sentences imposed for second degree kidnapping.

## ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

In the first assignment of error, appellate counsel challenges the fact that the sentences were ordered to run consecutively even though the offenses arose out of the same act or transaction. In the second assignment of error, appellate counsel asserts that trial counsel was ineffective for failing to file a motion to reconsider the sentences. We will address these two assignments of error together since they are intertwined.

Since defense counsel failed to object to the sentences imposed and failed to file a motion to reconsider sentence, the defendant is precluded from seeking

4

review of the sentences imposed. La.Code Crim.P. art. 881.1(E) and *State v. Doucet*, 09-1065 (La.App. 3 Cir. 5/5/10), 36 So.3d 1105, *writ denied*, 10-1195 (La. 12/17/10), 51 So.3d 19. In Assignment of Error No. 2, however, the defendant asserts that his counsel was ineffective for failing to file a motion to reconsider sentences. "[W]hen the record contains sufficient evidence to address the ineffective assistance of counsel issue, this court examines 'whether there was a reasonable probability that the trial court would have reduced' defendant's sentence if defendant's trial counsel made or filed a motion to reconsider sentence." *Id.*, 36 So.3d at 1110 (citing *State v. Blake*, 03-1465 (La.App. 3 Cir. 5/5/04), 872 So.2d 602.) This court has stated the following regarding the proof necessary for a successful claim that counsel was ineffective for failing to file a motion to reconsider sentence:

> When the defense counsel fails to file a motion to reconsider sentence, Defendant may have a claim of ineffective assistance of counsel when Defendant "can show a reasonable probability, but for defense counsel's error, his sentence would have been different." [*State v.*] *Prudhomme*, [02-511 (La.App. 3 Cir. 10/30/02),] 829 So.2d [1166] at 1177 (citing *State v. Texada*, 98-1647 (La.App. 3 Cir. 5/5/99), 734 So.2d 854). Moreover,
>
> > [a] claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief. This allows the trial judge an opportunity to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La. 1983). However, where the record contains evidence sufficient to decide the issue and the issue is raised by an assignment of error on appeal, it may be considered. *State v. James*, 95-962 (La.App. 3 Cir. 2/14/96); 670 So.2d 461.
>
> *State v. Francis*, 99-208, pp. 10-11 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, 491, *writ denied*, 00-544 (La. 11/13/00), 773 So.2d 156.
>
> To prove an allegation of ineffectiveness, Defendant must specifically show prejudice. *Blake*, 872 So.2d 602 (citing *State v. Reed*, 00-1537 (La.App. 3 Cir. 3/6/02), 809 So.2d 1261, *writ denied*, 02-1313 (La. 4/25/03), 842 So.2d 391). "Whether or not a defendant

5

received ineffective assistance of counsel is a two-part inquiry. First, we must determine whether the trial court would have reduced the Defendant's sentences upon the filing of a 'Motion to Reconsider Sentence.' Second, we must determine whether the sentences were excessive." *Id.* at 609.

*Id.* at 1110-11.

## *Would the Trial Court Have Reduced the Defendant's Sentences*

In this portion of the ineffective assistance of counsel analysis, the question is whether the trial court would have reduced the defendant's sentences had a motion to reconsider sentence been filed. While excessiveness is not the ultimate issue in this part of the analysis, a review of the factors considered by the trial judge is necessary to determine whether a motion to reconsider sentence would have persuaded the trial judge to re-weigh those factors and change his mind as to the appropriateness of the sentences imposed. As will be discussed in the excessiveness review below, the trial court considered a PSI report prepared in the defendant's case, considered evidence presented by both the state and the defense, and considered arguments of counsel. The trial court also gave extensive reasons for the sentences imposed, including the need to protect innocent children. Additionally, the trial court considered the fact that the initial call to police was for an act of violence committed by the defendant, followed by an act of violence toward the officers who responded to the call. The trial court also noted that at the time of the offenses, the defendant was on parole for a previous offense. Because he was afraid of being rearrested, the defendant ran when the police tried to question him regarding the domestic violence call. The trial court also considered as mitigating factors the defendant's remorse, the defendant's own family responsibilities, and the defendant's childhood history. Finally, when the trial court imposed the sentences and ordered them to run consecutively to one another,

6

the trial court stated that the total sentence was forty years. Thus, the trial court obviously intended the total sentence it imposed.

Although appellate counsel argues that the record does not support the imposition of consecutive sentences, appellate counsel does not argue that the trial court was unaware of a fact that may have convinced it to impose concurrent rather than consecutive sentences. Considering the trial court's extensive reasons for the sentences imposed as well as the trial court's express articulation as to the total number of years the defendant is to serve, we find the defendant has not shown a reasonable probability that a motion to reconsider sentence would have convinced the trial court to impose concurrent sentences.

*Excessiveness of Sentence*

Appellate counsel argues that the imposition of the sentences to run consecutively to one another renders the sentences excessive, "especially since each sentence must be served without benefits[,]" and since the total sentence is the maximum sentence the defendant could have received for the most serious offense to which he pled (second degree kidnapping). Referencing La.Code Crim.P. art. 883, appellate counsel notes that the offenses at issue arose out of a single course of conduct that lasted only a few minutes. Appellate counsel also notes that the defendant was twenty-nine years old at the time of his plea and that the defendant's prior offense was not a crime of violence. As for the specific facts relating to the offenses at issue, appellate counsel notes that the defendant did not take the truck by force, did not use a weapon to facilitate the crime, and did not physically force the children to get into the truck. Additionally, appellate counsel asserts that the defendant's offenses involved a one-time incident that involved several victims.

In further support of the excessiveness claim, appellate counsel asserts that the defendant has shown remorse for his actions, has apologized to the victims, has children of his own, and has completed several self-improvement classes while incarcerated. Appellate counsel further contends that the trial court failed to articulate sufficient reasons for the imposition of consecutive sentences. Finally, appellate counsel contends that the defendant did not receive a great benefit in return for his plea. Appellate counsel asserts that the defendant pled no contest to the most serious offenses and asserts that the dismissed charges carried significantly less sentencing possibilities.

In its reply brief, the state asserts that the sentences imposed are not excessive for several reasons. First, the state asserts that the total sentence imposed (forty years) is far less than the 140 year total sentence the defendant could have received had the trial judge imposed the maximum sentence on each count. Second, the state contends that the defendant is likely to commit another crime considering his attempt to carjack a second vehicle immediately after he wrecked the first vehicle. Finally, the state argues that the fact that all three children suffered injuries in the defendant's quest to escape arrest justifies a greater sentence than that imposed by the trial judge.

The law is well settled concerning the standard to be used in reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has

8

> wide discretion in the imposition of sentence within the
> statutory limits and such sentence shall not be set aside as
> excessive absent a manifest abuse of discretion. *State v.
> Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d
> 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067.
> The relevant question is whether the trial court abused its
> broad sentencing discretion, not whether another
> sentence might have been more appropriate. *State v.
> Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*,
> 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01),
779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d
331.

[E]ven when a sentence falls within the statutory sentencing range, it
still may be unconstitutionally excessive, and in determining whether
a sentence shocks the sense of justice or makes no meaningful
contribution to acceptable penal goals, this court has suggested that
several factors may be considered:

> [An] appellate court may consider several factors
> including the nature of the offense, the circumstances of
> the offender, the legislative purpose behind the
> punishment and a comparison of the sentences imposed
> for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00);
> 766 So.2d 501. While a comparison of sentences
> imposed for similar crimes may provide some insight, "it
> is well settled that sentences must be individualized to
> the particular offender and to the particular offense
> committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1
> Cir.1991). Additionally, it is within the purview of the
> trial court to particularize the sentence because the trial
> judge "remains in the best position to assess the
> aggravating and mitigating circumstances presented by
> each case." *State v. Cook*, 95-2784 (La.5/31/96); 674
> So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786,
789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061.

*State v. Decuir*, 10-1112, pp. 11-13 (La.App. 3 Cir. 4/6/11), 61 So.3d 782, 790-91.

As for the imposition of consecutive sentences, La.Code Crim.P. art. 883

provides as follows:

> If the defendant is convicted of two or more offenses based on
> the same act or transaction, or constituting parts of a common scheme

or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

As asserted by appellate counsel, this court has noted that the supreme court favors concurrent sentences. *State v. Wallace*, 11-1258 (La.App. 3 Cir. 5/30/12), 92 So.3d 592, *writs denied*, 12-1861, 12-1865 (La. 3/8/13), 109 So.3d 355. This court has also stated that a trial court must articulate particular justification for the imposition of consecutive sentences, justification beyond the standard guidelines set forth in La.Code Crim.P. art. 894.1. *State v. Hurst*, 10-1204 (La.App. 3 Cir. 4/13/11), 62 So.3d 327, *writ denied*, 11-975 (La. 10/21/11), 73 So.3d 383 (citing *State v. Dempsey*, 02-1867 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037, *writ denied*, 03-1917 (La. 6/25/04), 876 So.2d 823). The following factors, this court stated, may be considered:

> [T]he defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant contributes an unusual risk of danger to the public, the defendant's apparent disregard for the property of others, the potential for the defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain.

*State v. Thibodeaux*, 05-1187, pp. 8-9 (La.App. 3 Cir. 3/1/06), 924 So.2d 1205, 1211, *writ denied*, 06-700 (La. 10/6/06), 938 So.2d 65 (citations omitted).

In the present case, the trial court noted that the PSI report included a narrative of the defendant's past offenses – conspiracy to distribute cocaine and several misdemeanors. The trial court also noted that the defendant's parole was revoked because of the current offenses. The crimes committed by the defendant are classified as crimes of violence, the defendant is classified as a second felony

10

offender, and the offenses were committed while the defendant was on "good time parole." The trial court further noted that throughout his criminal history the defendant had also been placed, at various times, on both misdemeanor and felony probation.

After hearing evidence and arguments presented by both the state and the defense, the trial court stated the following:

THE COURT:

I'll go ahead and note for the record that, also on the defense side, I have been given letters requesting leniency from Betty Francis, from Margaret Coleman, from Joyce Lewis, and from Pastor Guillory with the Miracle Temple Full Gospel Church in Rayne, and we'll place these of record.

I don't suppose that the state and the defense have anything to offer the Court in the way of some sort of stipulated sentence?

MR. AYO [Assistant District Attorney]:

No, Your Honor.

MS. MARTIN [Defense Counsel]:

No, Your Honor.

THE COURT:

Which is why I always say that sentencing is a very lonely job. When the Court is placed in the position of having to decide the penalty for folks I take this very seriously. That's why I've permitted without restriction the evidence that I took in today, studying the presentence investigation report.

I did not have the benefit of hearing a trial, either in front of a jury or before the bench because it was a plea, so it's difficult to piece everything together. It's difficult to determine what is or is not absolutely correct and accurate, having not had the benefit of seeing evidence and witnesses at trial. I do, however, have a plea of no contest which means - -

. . . .

No contest means that the defendant - - and he was well - - it was well explained to him that what it meant was that he did not want

11

to admit his guilt but did not want to go to trial. I can clearly understand why he would not want to go to trial in exchange for what the state offered him. And although there was no plea agreement as to how much jail time he would serve or what his punishment would be, I will note that what he was looking at going to trial for the week that he pled was intentionally taking a motor vehicle belonging to another person in the presence of passengers by the use of force or intimidation, which is carjacking, forcibly seized and carried three children from one place to another, or imprisoned them where the victims were physically injured. Those are the second degree kidnapping charges.

Those are the charges that he's going to plead to today. When he did plead, there was an attempted carjacking charge, which I would imagine would be the second vehicle, was dismissed; charges of domestic abuse battery by strangulation were dismissed; false imprisonment with a dangerous weapon was dismissed; aggravated assault was dismissed, resisting an officer with force was dismissed; battery upon a police officer was dismissed, in exchange for the plea agreement.

So he was allowed to plead to a small number of the charges that he was actually facing trial for. Had he gone to trial and been convicted of all of these charges, we would be looking at a much greater possibility of punishment.

I've heard both sides here. You know, the main purpose of the law has been and always will be the protection, the safety of the public. That's why we're here, its to protect the public safety. The public includes a lot of people. In this case it includes children. And if the law - - if the purpose of the law is to protect the public, then I can double underline that is purpose is to protect those who cannot defend themselves, who are innocent, and who are young. I'm going to do that today.

. . . .

First of all, this whole incident started with a violent act. There was a dispatch, a call to a domestic disturbance, and Mr. - -

. . . .

It began with a call dispatching the police to a domestic violence, where the victim reported and continues to report being threatened and assaulted with a weapon, a knife. The police arrived knowing this situation and attempted to place the defendant either in custody or to question him. I'm not sure exactly what. But because he was already on parole for a previous crime, and as he himself says in the report, knew that when the police said, come here, it meant he

12

was going to be arrested again, he fought the policeman, a single police officer, he fought him, broke some equipment. Another act of violence.

Then he ran, and he ran to the Valero. And for whatever reason - - he postulates a lot of different things about meeting someone there or whatever - - in order to continue his escape from the police, jumped into a vehicle.

. . . .

I don't believe for a second, not for a second, that he didn't know there were children in that car. He knew it. He took off, again, endangering those children, driving a vehicle with officers in pursuit while it was raining and dangerous situations. He wrecked it into a tree, injuring the children. He injured himself as well, but nobody caused his injuries except himself. Then he left that vehicle after claiming that he was so concerned about the children and tried to enter another vehicle with children in it. That's when he was apprehended.

While I believe very little of what the defendant says to me, I believe everything that this young man who was one of the victims said to me. I believe that it was probably as bad as he has recited, and his words probably cannot express how bad it really was. The idea of someone, a stranger, jumping into a vehicle while the driver of that vehicle - - the adult that you were with is in the store, has got to be one [sic] the things that makes - - is the stuff of nightmares for children. This nightmare was a reality.

So there were numerous instances of violent behavior indicating to me a total disregard for the law. Someone who is already on parole for another crime does all of these things, in addition, and then tries to tell the Court that it was all because he was afraid and he didn't know and now he's remorseful.

The Court appreciates the fact that he's remorseful, that he's sorry. Some are not, so it's to his benefit that he's sorry. The Court will consider as a mitigating factor his apology to this young man and to the other children. I will take into consideration his social life, his - - the testimony that his mother gave about his having problems as a child. But, you know, the problems that were discussed or described by the mother are not uncommon. A lot of people have these problems, but they don't commit violent offenses against the public and against children.

There is a range of punishment for each of these crimes, which means the Judge has to assess the particular circumstances of each case. There are no mandatory sentences here. There is some

13

mandatory time without probation - - I mean, benefit of probation, parole, or suspension of sentence.

But, basically, for carjacking, we're looking at imprisonment for not less than two years, nor more than 20 years, without benefit of parole, probation, or suspension of sentence. And for second degree kidnapping, we're looking at imprisonment at hard labor for not less than five, nor more than 40 years. At least two of the sentence imposed, two years, shall be without benefit of parole, probation, or suspension of sentence.

The - - this court views the maximum and minimum sentences as two extremes. The minimum sentence is designed for those instances of this crime that are seen to be the least egregious, the least offensive, the least serious - - I can't think of another word - - of these crimes. These crimes are in and of themselves serious crimes, judging from the penalties.

. . . .

The maximum sentence in this Court's opinion is reserved for the absolute most egregious or most serious, most offensive, most uncalled-for behavior in committing these crimes. I've talked about the aggravating circumstances, which is the series of violent acts, and I've talked about the mitigating circumstances, for - - because of the evidence that Mr. Mouton has provided.

As stated previously, the trial court sentenced the defendant to ten years without benefits on each count, to run consecutively. Thus, although the defendant received a low to mid-range sentence on each count, the sentences were ordered to run consecutively totaling a sentence of forty years without benefit of probation, parole, or suspension of sentence. The defendant complains that the consecutiveness of the sentences renders them excessive.

The above excerpt shows that the trial court considered all of the factors necessary to justify the imposition of consecutive sentences. The trial court considered the defendant's previous history, the gravity of the offense, the harm done to the victims, the unusual risk of danger the defendant poses to the public, the defendant's disregard for the property of others, and the benefit the defendant

14

received from a plea bargain. The trial court adequately expressed its reasons for imposing consecutive sentences.

Finally, we note the supreme court's repeated admonition "that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case." *State v. Savoy*, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, 1283 (citing *State v. Walker*, 00-3200 (La. 10/12/01), 799 So.2d 461; *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996); and *State v. Humphrey*, 445 So.2d 1155 (La.1984)). Considering the reasons given by the trial court at sentencing and the supreme court's admonition, we find the sentences imposed in the present case are not excessive.

Accordingly, we find the defendant has failed to prove his counsel was ineffective for failing to file a motion to reconsider sentence and failed to prove that his sentences are excessive. Both Assignments of Error Nos. 1 and 2 lack merit.

The defendant's convictions and sentences are affirmed. The trial court is ordered to correct the commitment order to accurately reflect the sentences imposed for second degree kidnapping.

**AFFIRMED WITH INSTRUCTIONS.**

15